No. 24-2643

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

X Corp.,

*Plaintiff-Appellant,*

v.

Center for Countering Digital Hate, Inc.;
Center For Countering Digital Hate Ltd.;
Stichting European Climate Foundation,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Northern District of California
Hon. Charles R. Breyer
Case No. 3:23-cv-03836

---

## ANSWERING BRIEF OF DEFENDANT-APPELLEE
## STICHTING EUROPEAN CLIMATE FOUNDATION

---

Nathaniel L. Bach, *NBach@Manatt.com*
Benjamin E. Strauss, *BStrauss@Manatt.com*
Thomas R. Worger, *TWorger@Manatt.com*
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067-3119
(310) 312-4000 • Fax (310) 312-4224

*Attorneys for Defendant-Appellee*
Stichting European Climate Foundation

## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Stichting European Climate Foundation (ECF) submits this corporate disclosure statement. ECF does not have a parent corporation, nor does ECF have any stock, so no publicly held corporation owns 10% or more of ECF stock.

September 20, 2024          Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: *s/Nathaniel L. Bach*

*Attorneys for Defendant-Appellee*
Stichting European Climate
Foundation

# TABLE OF CONTENTS

INTRODUCTION ................................................................... 10

JURISDICTION .................................................................... 12

ISSUES PRESENTED .......................................................... 12

STANDARD OF REVIEW ..................................................... 13

STATEMENT OF FACTS ..................................................... 13

I.    ECF Is a Dutch Non-Profit Organization with No U.S. Presence. 13

II.   ECF Contracts with Brandwatch UK in the United Kingdom. .... 14

III.  The District Court Dismissed X's Claims for Lack of Personal Jurisdiction over ECF and for Failure to State a Claim Against ECF and CCDH. ................................................................. 15

SUMMARY OF ARGUMENT ................................................ 17

ARGUMENT ....................................................................... 18

I.    The District Court Correctly Dismissed X's Claims against ECF for Lack of Personal Jurisdiction. ................................... 18

    A.   ECF Did Not Purposefully Direct Its Conduct At The United States ............................................................. 22

        1.   ECF's Evidence Contradicts X's Unsupported Jurisdictional Allegations. .................................. 22

        2.   X Fails to Establish Express Aiming. ...................... 25

        3.   X Misrepresents Its Allegations Because They Are Fatal to Its Server-Access Theory. ...................... 29

    B.   X's New Argument that ECF's Alleged "Act" Occurred in the United States Is Factually Wrong and Waived. ........ 31

        1.   X Waived Its New Appellate Argument. ..................... 32

        2.   X Embraced *Calder*'s "Effects Test" Below, Yet Now Claims Error. ....................................... 33

        3.   X's New Argument Fails on the Merits. ...................... 34

    C.   Exercising Jurisdiction Over ECF Would Be Unreasonable. ........................................................ 39

II.   The District Court Correctly Dismissed X's Claims Against ECF for Failure to State a Claim. ....................................... 42

III.   The District Court Did Not Abuse Its Discretion by Denying X Leave to Amend Against ECF, and X Has Waived Any Such Argument by Not Raising It in Its Opening Brief. .......................... 44

CONCLUSION .......................................................................................... 46

# TABLE OF AUTHORITIES

## CASES

*Alejandro Fernandez Tinto Pesquera, S.L. v. Fernandez Perez,*
  No. 20-cv-2128-LHK, 2021 WL 254193 (N.D. Cal. Jan. 26, 2021).....37

*AMA Multimedia, LLC v. Wanat,*
  970 F.3d 1201 (9th Cir. 2020).....................................................13, 23

*Amoco Egypt Oil Co. v. Leonis Nav. Co.,*
  1 F.3d 848 (9th Cir. 1993)..................................................................41

*Asahi Metal Indus. Co. v. Superior Court,*
  480 U.S. 102 (1987)....................................................................40, 41

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
  874 F.3d 1064 (9th Cir. 2017)............................................................21

*Ayla, LLC v. Alya Skin Pty. Ltd.,*
  11 F.4th 972 (9th Cir. 2021) .............................................................39

*BillFloat Inc. v. Collins Cash Inc.,*
  105 F.4th 1269 (9th Cir. 2024) ..........................................................44

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008)............................................................45

*Brainerd v. Governors of the University of Alberta,*
  873 F.2d 1257 (9th Cir. 1989)......................................................37, 38

*Bristol-Myers Squibb Co. v. Superior Court,*
  582 U.S. 255 (2017)...........................................................................19

*Browne v. McCain,*
  612 F. Supp. 2d 1118 (C.D. Cal. 2009) .............................................30

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985)...........................................................................20

*CollegeSource, Inc. v. AcademyOne, Inc.,*
  653 F.3d 1066 (9th Cir. 2011) ...........................................................19

*Core-Vent Corp. v. Nobel Indus. AB,*
  11 F.3d 1482 (9th Cir. 1993)..............................................................40

## TABLE OF AUTHORITIES (continued)

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................. 20

*Data Disc., Inc. v. Sys. Tech. Assoc., Inc.*,
557 F.2d 1280 (9th Cir. 1977) ...................................... 23, 44

*DEX Sys., Inc. v. Deutsche Post AG*,
727 F. App'x 276 (9th Cir. 2018) ...................................... 38

*Doe v. Geller*,
533 F. Supp. 2d 996 (N.D. Cal. 2008) .............................. 41

*Elkhart Eng'g Corp. v. Dornier Werke*,
343 F.2d 861 (5th Cir. 1965) ............................................ 36

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ........................................................... 18

*Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018) ......................... 13, 33, 35, 36

*Gofron v. Picsel Techs., Inc.*,
804 F. Supp. 2d 1030 (N.D. Cal. 2011) ........................... 25

*Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*,
784 F.2d 1392 (9th Cir. 1986) .......................................... 36

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ........................................................... 20

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ...................................... 21, 25

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) ........................................................... 43

*Hungerstation LLC v. Fast Choice LLC*,
No. 19-CV-05861-HSG, 2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ................................................................................. 30

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) .............................................. 13

*In re E.R. Fegert, Inc.*,
887 F.2d 955 (9th Cir. 1989) ............................................ 32

## TABLE OF AUTHORITIES (continued)

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ............................................................ 25

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
No. SACV111062JVSANX, 2014 WL 12700983 (C.D. Cal. Apr.
10, 2014) ............................................................................................ 39

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
649 F.2d 1266 (9th Cir. 1981) .......................................................... 40

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945) ........................................................................... 19

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) ........................................................................... 16

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008) ...................................................... 13, 44

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ............................................................ 24

*Mohammad v. Gen. Consulate of State of Kuwait in Los Angeles*,
28 F.4th 980 (9th Cir. 2022) ................................................. 13, 14, 15

*Morrill v. Scott Financial Corp.*,
873 F.3d 1136 (9th Cir. 2017) ................................................... passim

*Navellier v. Sletten*,
262 F.3d 923 (9th Cir. 2001) ............................................................ 43

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) .......................................................... 13

*Prevail Legal, Inc., v. Justin Gordon, et al.*,
No. 20-CV-07173-BLF, 2021 WL 1947578 (N.D. Cal. May 14,
2021) ................................................................................................... 30

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ..................................................... passim

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) .................................................... 21, 44

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ............................................................ 26

## TABLE OF AUTHORITIES (continued)

*United States v. $25,000 U.S. Currency*,
  853 F.2d 1501 (9th Cir. 1988) .............................................................. 29

*Walden v. Fiore*,
  571 U.S. 277 (2014) ....................................................................... passim

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
  472 F. Supp. 3d 649 (N.D. Cal. 2020) ......................................... 30, 31

*Whittaker Corp. v. Execuair Corp.*,
  953 F.2d 510 (9th Cir. 1992) .............................................................. 32

*Will Co. v. Lee*,
  47 F.4th 917 (9th Cir. 2022) .............................................................. 34

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ...................................................................... 19, 40

*Yamashita v. LG Chem, Ltd.*,
  62 F.4th 496 (9th Cir. 2023) .............................................................. 26

*Ziegler v. Indian River Cnty.*,
  64 F.3d 470 (9th Cir. 1995) .............................................................. 20

### STATUTES

Cal. Civ. Proc. Code §§ 425.16 *et seq* ............................................... 15

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 .............................. 21

### OTHER AUTHORITIES

Kate Conger & Ryan Mac, *X to Close Flagship San Francisco
  Offices*, NY Times (Aug. 5, 2024), at
  https://www.nytimes.com/2024/08/05/technology/x-twitter-san-
  francisco-office.html ........................................................................ 40

### RULES

Fed. R. Civ. P. 4(k)(1)(A) .................................................................. 19

Fed. R. Civ. P. 4(k)(2) .................................................................. 17, 21

## TABLE OF AUTHORITIES (continued)

Fed. R. Civ. P. 11 ................................................................. 45

Fed. R. Civ. P. 12(b)(2) ......................................................... 12

Fed. R. Civ. P. 12(b)(6) .................................................. passim

## INTRODUCTION

X Corp. (X) added Stichting European Climate Foundation (ECF)—a Dutch non-profit with no ties to the United States and whose mission is to tackle the global climate crisis by fostering a net-zero emission society—to its SLAPP suit against Center for Countering Digital Hate, Inc. (CCDH US) and Center for Countering Digital Hate Ltd. (CCDH UK) (collectively, CCDH).  X sued CCDH for reporting on hate speech hosted on X's social media platform (formerly known as Twitter) and alleges that ECF conspired in facilitating newsgathering in connection with those reports.

The district court correctly concluded that X's claims were an effort to punish these non-profit defendants for protected newsgathering and publishing and held that X failed to state a claim against any of them. The district court also rightly held that it lacked personal jurisdiction over ECF.  Pressing its campaign against ECF further, X has appealed, but its arguments suffer from the same infirmities that plagued them in the district court, and its new (*i.e.*, waived) appellate argument fares no better.

First, ECF's unrebutted evidence—showing that ECF facilitated CCDH's access to the software platform at issue entirely outside of the United States, via a UK resident and employee of CCDH UK—contradicts X's unsupported jurisdictional allegations.  X's proposed causal chain between ECF's mere sharing of a login to that UK platform

and numerous subsequent intervening events—including (1) CCDH's platform access and newsgathering, (2) its publication of critical reporting, (3) alleged calls for advertiser boycotts, and (4) advertisers' independent decisions to pull away from X—are much too attenuated to support jurisdiction. The district court agreed and observed that X cited no case that came remotely close to supporting jurisdiction over an international defendant like ECF on such thin jurisdictional allegations.

Second, X asks this Court to redefine the outer boundary of the minimum contacts test to reach insignificant foreign acts like those alleged here by arguing that ECF actually transmitted login information to CCDH while present "in" the United States. This Court should decline the invitation, not only because it would radically rewrite this Court's jurisdictional precedents and open the floodgates to suits against international parties, but because X never made such an argument to the district court and therefore waived it. In any event, X's new argument—that *Calder*'s effects test should not apply—is factually and legally wrong because ECF was never physically present in the United States.

Third, the district court correctly held that exercising jurisdiction over ECF based on such tenuous jurisdictional allegations would be unreasonable and would violate due process. It rightly exercised its discretion to deny X's requests for jurisdictional discovery or amendment (requests that X does not renew on appeal), correctly reasoning that no

11

additional facts could alter this conclusion, particularly in light of ECF's uncontested evidence.

Should this Court need to reach the issue, it should also affirm the district court's conclusion that X failed to state a claim against ECF under Rule 12(b)(6), particularly due to X's failure to plead a legally sufficient theory of causation.

Accordingly, ECF respectfully requests that this Court affirm the judgment of the district court.

## JURISDICTION

ECF agrees with X's statement regarding subject matter jurisdiction.

## ISSUES PRESENTED

I. Whether the district court correctly dismissed X's Amended Complaint against ECF for lack of personal jurisdiction under Rule 12(b)(2).

II. Whether the district court correctly dismissed X's Amended Complaint against ECF for failure to state a claim under Rule 12(b)(6).

III. If X did not waive the issue by failing to raise it in its Opening Brief, whether the district court abused its discretion by denying X leave to amend as to ECF.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal for failure to state a claim and for lack of personal jurisdiction *de novo*. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 698 (9th Cir. 2021) (failure to state a claim); *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (lack of personal jurisdiction). However, "[t]he factual findings underlying the district court's jurisdiction determination are reviewed for clear error." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) (quoting *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018)).

This Court "review[s] a denial of leave to amend for abuse of discretion." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (citation omitted). A district court's decision to deny or limit jurisdictional discovery is also reviewed for abuse of discretion. *See Mohammad v. Gen. Consulate of State of Kuwait in Los Angeles*, 28 F.4th 980, 988 (9th Cir. 2022).

## STATEMENT OF FACTS

### I. ECF Is a Dutch Non-Profit Organization with No U.S. Presence.

ECF is a European non-profit organization that operates exclusively in Europe and the United Kingdom. 1-ECFSER-194. Organized as a Public Benefit Organization under the laws of the Netherlands, ECF's mission is to help tackle the climate crisis by

fostering development of a net-zero emission society. *Id.* ECF's headquarters and principal place of business is in The Hague, Netherlands. *Id.* ECF has seven additional offices, all of which are in Europe or the United Kingdom (Berlin, Brussels, Budapest, London, Madrid, Paris, and Warsaw). *Id.*

ECF does not operate in California or anywhere else in the United States. 1-ECFSER-194. It is not registered or licensed to do business anywhere in the United States. *Id.* It does not have an agent for service of process in the United States, nor has it ever been party to any litigation in any forum anywhere in the United States before this case. *Id.* ECF has no offices, property, assets, bank accounts, or computer servers in the United States. *Id.* In all respects, ECF is a foreign entity, headquartered and operating overseas, with no ties to California or the United States.

## II. ECF Contracts with Brandwatch UK in the United Kingdom.

ECF subscribes to social-media monitoring services provided by the UK-based entity Runtime Collective Limited dba Brandwatch (Brandwatch UK). Brandwatch UK is a foreign company organized under the laws of the United Kingdom, with its registered office in East Sussex, UK. 1-ECFSER-195, 197–205. ECF entered into a services agreement with Brandwatch UK on January 25, 2021. *Id.* That agreement was renewed in 2022 and 2023. 1-ECFSER-195–96, 206–26. Each agreement provides choice of law and forum-selection provisions based on the domicile of the customer (*i.e.*, ECF). Because ECF is

14

domiciled in the Netherlands, English courts have "exclusive jurisdiction[,]" and the agreements are to be interpreted under English law. *Id.*

ECF facilitated CCDH's authorized access to Brandwatch UK via Callum Hood. 1-ECFSER-196; 1-ER-86–90. Mr. Hood resides in the UK and, contrary to X's allegation, is employed not by CCDH US but by CCDH *UK*. 1-ECFSER-235. A May 13, 2022 email shows that Brandwatch UK's representative (based in London) willingly facilitated CCDH's authorized access to Brandwatch UK via the UK-based Mr. Hood at the e-mail address info@counterhate.com. 1-ER-86–90, 93.

## III. The District Court Dismissed X's Claims for Lack of Personal Jurisdiction over ECF and for Failure to State a Claim Against ECF and CCDH.

X's filed its Amended Complaint alleging four claims (three against ECF). 1-ER-94–118. CCDH moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) and to strike under California's Anti-SLAPP law, Cal. Civ. Proc. Code §§ 425.16 *et seq*. 1-ER-151. ECF joined in CCDH's Rule 12(b)(6) motion, and filed its own motion to dismiss under Rules 12(b)(2) and 12(b)(6) on the grounds that the district court lacked personal jurisdiction over it and that X failed to state a claim. 1-ER-151. The district court heard argument on the motions. 1-ECFSER-3–65.

The district court granted defendants' motions and entered judgment in their favor. 1-ER-3; 1-ER-4–85. With respect to personal jurisdiction, the district court's 30-page order reviewed all theories that

15

X proposed and determined that none supported exercising personal jurisdiction over ECF. 1-ER-4–33. The court concluded that X failed to establish that ECF purposefully directed its actions at the United States (or California), reasoning that "[i]t is hard to see the sharing of login credentials alone as enough to create a relationship to the forum state." 1-ER-18. The district court rejected X's argument that the alleged sharing of login credentials could open the door to nationwide jurisdiction in the United States for everything that followed, concluding that "that expansive view of jurisdiction—that there is jurisdiction over a defendant so long as it played any role in a causal chain that eventually leads to a plaintiff's harm—misses the point that it is <u>ECF's</u> contacts with the forum that matter." 1-ER-18 (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

The district court also rejected X's server-access theory of jurisdiction, explaining that facilitating access "to servers that happen to be in the United States is not a connection with the forum created by ECF's own conduct. . . . Rather, it is the kind of 'random, isolated, or fortuitous' connection that does not establish express aiming." 1-ER-22 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

The district court also made factual findings about ECF's evidence, including that (1) "ECF provided evidence that it shared login credentials with CCDH U.K., and that is the only evidence before the Court on this point," 1-ER-17; (2) "ECF did not share the login credentials to a U.S.-

16

based website or to a specific server in the U.S., but to the Brandwatch platform generally," 1-ER-18; and (3) that "ECF's evidence shows that ECF shared its login credentials with CCDH U.K., and so the relevant intentional act involved a U.K. entity," 1-ER-25.

Finally, the district court held that ECF carried its burden to show that exercising jurisdiction over ECF on the facts alleged would also be "unreasonable" and not comport with fair play and substantial justice. 1-ER-26–30.

The district court therefore held that it lacked personal jurisdiction over ECF, granted the motion to dismiss on both 12(b)(2) and 12(b)(6) grounds, and entered judgment in ECF's favor. 1-ER-3–33. X appealed.

## SUMMARY OF ARGUMENT

I.  The district court correctly determined that X failed to establish personal jurisdiction over ECF under Rule 4(k)(2) or otherwise.  It properly held that ECF's unrebutted evidence defeated X's unsupported allegations, that those allegations would not establish jurisdiction in any event, and that X's server-access allegations were also insufficient.  X's new appellate argument—that ECF's transmission of login credentials occurred "in" the U.S.—was not made below and is waived, contradicts X's prior arguments, and fails on the merits.

II.  The district court also correctly dismissed X's claims against ECF for failure to state a claim under Rule 12(b)(6) for the reasons set forth in CCDH's motion to dismiss, which ECF joined.  As in the district

court, ECF joins in the arguments in CCDH's Answering Brief as to X's claims against ECF. In addition, X's highly attenuated theory of causation against ECF is even more remote than that proposed against CCDH, so X's state law tort claims fail as a result.

III. The district court did not abuse its discretion in denying X leave to amend or to conduct jurisdictional discovery. On appeal, X does not renew its request for jurisdictional discovery, nor does it propose any amendment for the purposes of establishing jurisdiction over ECF, so any such requests are waived. In any event, no amendment could confer jurisdiction over ECF in light of ECF's unrebutted evidence.

## ARGUMENT

## I. The District Court Correctly Dismissed X's Claims against ECF for Lack of Personal Jurisdiction.

The district court correctly determined that ECF's alleged conduct was insufficient to support personal jurisdiction under any theory raised by X in the district court, including as a result of ECF's unrebutted evidence. X's retread of its arguments changes nothing. Its repeated mischaracterizations of its complaint underscore the futility of its attempts, and its new appellate argument that ECF's alleged conduct occurred "in" the United States is waived, contradicts X's arguments below, and lacks merit.

A court's "power to exercise jurisdiction over a defendant" is limited by the due process concerns of the Fourteenth Amendment. *Ford Motor*

*Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). The purpose of this limitation is to "protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties."[1] *Walden*, 571 U.S. at 284.

"For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073–74 (9th Cir. 2011) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Under this minimum contacts analysis, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citation omitted). In assessing jurisdiction, the "'primary concern' is 'the burden on the defendant.'" *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 263 (2017) (citation omitted). Here, the district court correctly concluded that ECF could not reasonably anticipate being subjected to jurisdiction in the United States based upon X's allegations.

---

[1] Where, as here, no federal statute authorizes personal jurisdiction, California law applies. *See* Fed. R. Civ. P. 4(k)(1)(A). California's long-arm statute "is coextensive with federal due process requirements, [so] the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

Personal jurisdiction exists in two forms:  general and specific.  *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995).  General jurisdiction arises when an entity's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted).  The parties agree that ECF is not subject to general jurisdiction, 1-ER-11, and X does not argue otherwise.

Specific jurisdiction, on the other hand, exists where "the defendant has 'purposefully directed' [its] activities" toward the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (holding that a "relationship among the defendant, the forum, and the litigation is the essential foundation" of specific jurisdiction (citation omitted)).  As relevant here, specific jurisdiction cannot lie where the contacts between the defendant and the forum are "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286.  Rather, a plaintiff must establish a "substantial connection" between the defendant and the forum. *See id.*, at 284.  X has not and cannot do so.

Three requirements must be met for a district court to exercise specific jurisdiction over a non-resident defendant like ECF:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). The plaintiff bears the burden on the first two prongs; the defendant on the third. *Schwarzenegger*, 374 F.3d at 802.

Rather than choose a particular forum state, X attempts to invoke nationwide personal jurisdiction over ECF under Federal Rule of Civil Procedure 4(k)(2).[2] X has acknowledged that courts have "rarely exercised" jurisdiction under 4(k)(2), 1-ECFSER-159, and this is not one of those rare cases where nationwide jurisdiction is appropriate. To establish nationwide jurisdiction under Rule 4(k)(2), X must establish all of the following: that (l) the claim arises under federal law, (2) the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction, and (3) the district court's exercise of jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461–62 (9th Cir. 2007). Here, X's sole federal claim is brought under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (CFAA), which the district court held fails as a matter of law. But X fails

---

[2] As the district court noted, X never clearly articulated an argument that ECF's conduct was expressly aimed at California. 1-ER-11. X does not make such an argument in its Opening Brief, so any such argument is waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

to establish nationwide jurisdiction over ECF even if its CFAA claim were adequately pleaded.

## A. ECF Did Not Purposefully Direct Its Conduct At The United States.

The linchpin of X's jurisdictional theory against ECF is its allegation that ECF targeted the United States by sharing its Brandwatch UK account with CCDH *US* in the United States. 1-ER-98. But, as the district court reasonably (and correctly) found, ECF's evidence contradicts this speculative allegation, eviscerating X's theory. 1-ER-17.

Even if ECF had shared its login with a U.S.-based recipient—which all evidence contradicts, *id.*—the district court correctly held that such an act would be too insubstantial and attenuated to confer jurisdiction for all subsequent events, including those aimed at a foreign platform, Brandwatch UK. 1-ER-18. Accordingly, the district court properly held that there was no express aiming at the United States and thus no purposeful direction.

### 1. ECF's Evidence Contradicts X's Unsupported Jurisdictional Allegations.

ECF submitted unrebutted evidence that contradicts X's jurisdictional allegation that "ECF intentionally and knowingly provided CCDH US with ECF's login credentials, thus targeting its conduct at the United States." 1-ER-98 (emphasis added). That evidence shows that ECF facilitated CCDH's authorized access to Brandwatch UK—not via

CCDH US—but via a **UK**-based employee of CCDH **UK**, Callum Hood. 1-ECFSER-196, 235; 1-ER-86–90. X submitted no evidence in response, and the district court therefore reasonably found that ECF's evidence defeated X's unsupported allegations, observing that in jurisdictional challenges, courts may not "assume the truth of allegations in a pleading which are contradicted by affidavit." 1-ER-25 (quoting *Data Disc., Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977); *AMA Multimedia*, 970 F.3d at 1207 ("[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." (citation omitted)).

As an initial matter, the contracts between ECF and Brandwatch UK are between a Dutch and UK entity, respectively, and provide that any dispute is to be heard in English courts under English law. 1-ECFSER-193–226. Then, the May 12–13, 2022 email chain in Mr. Després's declaration shows that, contrary to X's allegations, Brandwatch UK knowingly granted (and restored) access for Callum Hood via the email address info@counterhate.org. 1-ER-87. Mr. Hood is a <u>UK</u> resident and employee of CCDH <u>UK</u>. 1-ECFSER-235. These uncontested emails show:

- On May 12, 2022, Dámaris Queiruga of Brandwatch UK (whose email footer indicates her "LONDON" location) wrote: "Hi Callum, . . . . My Support Team let me know that you reached out to them because you are unable to log into your Brandwatch account. . . . The work will be finalised by the end of the day and will be happy to notify you once this has happened so you can log

23

back in."

- Callum Hood (CCDH UK) replied: "Thanks Damaris – that makes sense, we'll look out for an update from you."

- On May 13, 2022, Ms. Queiruga wrote to Mr. Hood and two representatives of ECF: "Hi Josh, Callum & Claudia, I am delighted to inform you that your upgrade to the new segmentation UI has been successful and you can now log back into the platform."

1-ER-87–88. None of these individuals involved in CCDH's access to Brandwatch UK is based in the U.S., and X presented no evidence to show otherwise. 1-ER-10. Because X did not provide any contradictory evidence (admissible or otherwise), it cannot rely on its unsupported allegations. *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) ("*If* both sides submit affidavits, then '[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." (citation omitted, emphasis added)).

Beyond its jurisdictional significance, this evidence also shows that—contrary to X's theory of unauthorized access—ECF's sharing of its account was fully authorized by Brandwatch UK, rendering false the entire central theory of X's lawsuit against ECF (and CCDH). X, a stranger to the contract between ECF and Brandwatch UK, thus attempts to stand in Brandwatch UK's shoes and object to the access that Brandwatch UK expressly approved and coordinated.

In the face of ECF's dispositive evidence, X is left to speculate that ECF *could have* also provided access to a U.S.-based recipient of CCDH

24

US "on another occasion."[3] AOB-47. But the district court made factual findings to the contrary, noting that "ECF provided evidence that it shared login credentials with CCDH U.K., and that is the only evidence before the Court on this point." 1-ER-17. X's speculation cannot overcome unrebutted evidence and reasonable factual findings. *Gofron v. Picsel Techs., Inc.*, 804 F. Supp. 2d 1030, 1037 (N.D. Cal. 2011) ("Conflicts in the evidence are resolved in the plaintiff's favor only if the plaintiff submits admissible evidence." (citation omitted)). Moreover, X does not allege that ECF engaged in multiple instances of transmitting credentials to CCDH—which would make no sense—but rather refers only to several instances of "agree[ment]," to share credentials, 1-ER-105, and "that CCDH then accessed, and retrieved information from [Brandwatch UK], on multiple *occasions*," 1-ER-95 (emphasis added).

## 2. X Fails to Establish Express Aiming.

Even if X's unfounded speculation that ECF transmitted credentials to a U.S.-based recipient were true—and it is not—it still would not permit the exercise of jurisdiction. The provision of a login to a U.S. entity would not be enough to confer jurisdiction because "the defendant's suit-related conduct must create a *substantial* connection

---

[3] Notably, X did not make this particular "multiple-transmissions" argument below so it too is waived. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("[A]n issue will generally be deemed waived on appeal if the argument was not 'raised sufficiently for the trial court to rule on it.'" (citation omitted)); *Holland*, 485 F.3d at 457 ("Because this argument was not raised below, it is waived.").

25

with the forum State." *Walden*, 571 U.S. at 284 (emphasis added). Here, the simple act of a Dutch entity facilitating access to a UK-based software platform—no matter where the recipient might be based—is too insubstantial and "attenuated" to confer U.S. jurisdiction. *Id.* at 286 (holding that jurisdiction cannot lie based on "'random, fortuitous, or attenuated' contacts . . . with other persons affiliated with the State" (citation omitted)). X cites no case that permits exercising jurisdiction for acts as insubstantial as ECF is alleged to have done here, particularly where it is the subsequent acts of other parties that are alleged to be the actual injury-causing events (*i.e.*, CCDH's access to Brandwatch UK, newsgathering, publication, and calls for advertiser boycotts, and advertisers' own spending decision). *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("'[B]are bones' assertions of minimum contacts with the forum . . . will not satisfy a plaintiff's pleading burden.").

Moreover, "for an injury to arise out of a defendant's forum contacts require[s] 'but for' causation, in which 'a direct nexus exists between [a defendant's] contacts [with the forum state] and the cause of action.'" *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023). X cannot establish such a causal connection and cannot even decide whether the key tortious event is ECF's alleged *sharing* of login information or CCDH's alleged *access* of X data via Brandwatch UK:

> ➢ First, X's brief argues that it is the <u>sharing</u> of access: "At bottom, ECF's transmittal of its login credentials to CCDH in

the United States *is* its tort against X." AOB-45; *see also* AOB-49 ("ECF's transmission of login credentials plays the most 'substantial' role possible: *it is the very tortious act giving rise to X's claims*.").

➢ But, several pages later, X changes its mind, asserting that it is CCDH's <u>access</u> of X's data "*is the conduct that gives rise to those claims*," and that X's claims all center "*on CCDH's unlawful access itself*." AOB-51.

Whichever theory of causation X proposes—and, as the district court confirmed, X failed to plead sufficient causation, 1-ER-82–83—it cannot be the supposed transmission of login credentials to CCDH "in the United States." AOB-45. As ECF's evidence shows, CCDH had access to Brandwatch UK's platform via Callum Hood of CCDH UK. 1-ER-87. Thus, CCDH would have had access to the same Brandwatch UK data irrespective of whether ECF had also shared login information with CCDH US, thereby dooming X's specious express aiming argument.[4] In addition, X alleges that CCDH also obtained data it used in its reporting through scraping—entirely distinct from accessing data on Brandwatch UK. *See, e.g.*, 1-ER-102. Likewise, X's alleged global advertising-related damages are not dependent on whether ECF shared a Brandwatch UK login with a U.S. or UK recipient.

---

[4] As X alleged, Mr. Hood is CCDH's Head of Research and was quoted in the reports about which X bases its claims. 1-ER-109.

Thus, such a highly attenuated link in the lengthy, supposed causal chain—including multiple independent, intervening events like (1) CCDH's access to a UK database for newsgathering, (2) the global publication of critical reporting, and (3) calls for advertiser boycotts, which allegedly resulted (4) in advertisers deciding to decrease their spending on X—cannot support jurisdiction (just as it cannot state a claim). As the district court reasoned, X's "expansive view of jurisdiction—that there is jurisdiction over a defendant so long as it played any role in a causal chain that eventually leads to a plaintiff's harm—misses the point that it is ECF's contacts with the forum that matter." 1-ER-18 (citing *Walden*, 571 U.S. at 284). X's attempt to radically expand the outer boundary of minimum contacts therefore fails.

X's interference claim against ECF also fails to support United States jurisdiction because X concedes that its own contract with Brandwatch UK "was signed by Twitter International Unlimited Company, a company organized and existing under the laws of Ireland with its headquarters in Dublin." 1-ER-103. In other words, the very contract with which X asserts ECF and CCDH interfered was also between two foreign companies—Brandwatch UK and Twitter's Irish affiliate—further undermining the case for express aiming at the U.S. or California.

At bottom, as ECF's evidence shows, X's claims against ECF are fundamentally about a Dutch non-profit (ECF), contracting with a UK

28

company (Brandwatch UK), whose services were accessed by a UK-based employee of a UK entity (CCDH UK), and led to the global publication of reports that allegedly scared off "global" advertisers of X, a multinational company[5] that calls itself the "modern global town square."[6] 1-ECFSER-183 (noting X's marketing materials stating that "X is a global product"). None of this comes close to express aiming at the United States, nor does it establish foreseeability that any harm to X would be felt in the U.S. or California.[7] *Schwarzenegger*, 374 F.3d at 804 (*Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific [personal] jurisdiction." (citation omitted)).

### 3. X Misrepresents Its Allegations Because They Are Fatal to Its Server-Access Theory.

X misrepresents its own allegations because they are fatal to its server-targeting argument. X insists that ECF aimed its conduct at the United States because CCDH accessed "X's information on Brandwatch

---

[5] Notably, X's terms of service provide that X's *Irish* office contracts with its EU users. 1-ECFSER-101.

[6] 1-ECFSER-76 (Linda Yaccarino, "One year in, the future of X is bright," Oct. 26, 2023, https://blog.twitter.com/en_us/topics/company/2023/one-year-in).

[7] Though the district court found that X satisfied the foreseeable harm prong, the evidence and allegations are to the contrary and this Court can and should affirm by finding that X failed to carry its burden on this prong, too. *United States v. $25,000 U.S. Currency*, 853 F.2d 1501, 1504, n.1 (9th Cir. 1988) ("[W]e may affirm the district court's ruling on any basis presented by the record.").

servers *located in the United States*." AOB-50. But this misstates the actual allegations of X's complaint that state that X's "data sets were stored, ***among other places***, on protected servers in the United States," 1-ER-102 (emphasis added), and that "[t]he servers that CCDH targeted to retrieve data via this method ***included*** servers in the United States," 1-ER-95 (emphasis added). That some of X's data or Brandwatch UK's servers may be located in the United States, *among other places*, is precisely the type of "random, fortuitous, or attenuated" connection that cannot support exercising jurisdiction over a foreign defendant like ECF. *See Walden*, 571 U.S. at 286. Moreover, as the district court correctly recognized, courts in this Circuit have repeatedly held that the mere location of a server cannot establish personal jurisdiction. 1-ER-21 (citing *Browne v. McCain*, 612 F. Supp. 2d 1118, 1124 (C.D. Cal. 2009); *Prevail Legal, Inc., v. Justin Gordon, et al.*, No. 20-CV-07173-BLF, 2021 WL 1947578, at *6 (N.D. Cal. May 14, 2021) (finding "it 'random' that the GitHub server hosting [plaintiff's] software code happened to be in California"); *Hungerstation LLC v. Fast Choice LLC*, No. 19-CV-05861-HSG, 2020 WL 137160, at *1 (N.D. Cal. Jan. 13, 2020)).

The only server-related case that X relies on involves radically different circumstances and actually supports dismissal rather than jurisdiction. AOB-51 (discussing *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020)). In *WhatsApp*, the defendant itself accessed plaintiff's "own servers" for the purpose of transmitting

30

malware through those servers. *WhatsApp*, 472 F. Supp. 3d at 671–72. But here, the access was done by another party (CCDH); the servers allegedly accessed belonged to a nonparty (Brandwatch UK); and X concedes that those servers are also located outside the U.S. 1-ER-95, 102. Nor does X allege that ECF hacked any servers or routed any malware or malicious code through Brandwatch UK's servers, much less X's own. Therefore, the district court correctly distinguished *WhatsApp* because it does not support X's argument at all. 1-ER-19 ("Here, there is no support for the notion that ECF specifically sought out any particular servers within the forum, much less transmitted any code onto them.").

### B. X's New Argument that ECF's Alleged "Act" Occurred in the United States Is Factually Wrong and Waived.

X raises a new argument on appeal that differs dramatically from its district court arguments. It now asserts that jurisdiction is proper because ECF's actions actually took place "in" the United States, AOB-43–49, and therefore that the district court erred by applying the "effects test" from *Calder*, AOB-45. This new argument fails for three reasons. First, X waived it by not raising it in the district court. Second, X based its argument for jurisdiction on *Calder*'s effects test below—conceding its proper application now. Third, even were the Court to consider this new argument, it fails because it is not supported by the allegations, evidence, or law.

### 1. X Waived Its New Appellate Argument.

X never asked the district court to find jurisdiction over ECF on the basis that ECF provided Brandwatch UK access to CCDH "in" the United States; such argument is therefore waived on appeal. 1-ER-4–33; 1-ECFSER-3–65, 149–69. "As a general rule, an appellate court will not hear an issue raised for the first time on appeal." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992) (citations omitted). While no "bright line rule" exists to determine whether a matter has been properly raised in the district court, a "workable standard . . . is that the argument must be raised sufficiently for the trial court to rule on it." *Id.* (citing *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989)). As this Court recognizes, "[t]his principle accords to the district court the opportunity to reconsider its rulings and correct its errors." *Id.* (citation omitted). X did not afford the district court this opportunity, so its new argument is waived.

The district court considered every theory of jurisdiction that X proposed in its thorough 30-page order and held that none was sufficient. 1-ER-4–33. Now, in an effort to try something different, X asserts a new argument based on a case, *Morrill v. Scott Financial Corp.*, 873 F.3d 1136 (9th Cir. 2017), that it did not cite for this proposition below, where it sought instead to <u>distinguish</u> *Morrill*, which found no jurisdiction over a foreign state defendant. 1-ECFSER-162. But now X cites *Morrill* for an entirely different proposition—that *Calder*'s effects test should not apply

because ECF engaged in the allegedly tortious act of sharing Brandwatch UK access "in" the U.S.—and makes this its lead argument on appeal.[8] But because X did not present this argument below, this Court should deem it waived and not address it.

### 2. X Embraced *Calder*'s "Effects Test" Below, Yet Now Claims Error.

X's gamesmanship in its new appellate argument is evident when comparing X's Opening Brief with its brief in opposition to ECF's motion to dismiss in the district court. On appeal, X cites *Freestream* for its finding that "[t]he district court's reliance on the *Calder* effects test" rather than "the location of [the] allegedly intentional tortious conduct" was 'misplaced.'" AOB-45 (quoting *Freestream*, 905 F.3d at 603–04). But X relied entirely on the *Calder* standard in the district court to argue that ECF's foreign acts were aimed at the U.S. and had effects there. For example,

- X acknowledged the minimum contacts inquiry is governed by whether the defendant "purposefully direct[s] its activities at the forum." 1-ECFSER-160. This quotes the effects test of *Calder*.

---

[8] This recalls X's principal argument below—that ECF had consented to jurisdiction through X's terms of service—which X was forced to abandon at the hearing after ECF pointed out that X had misread its own terms, which do not provide for U.S. jurisdiction over foreign entities and individuals. *See* 1-ER-11 n.5; 1-ECFSER-54.

- X's heading argues that "ECF Purposefully Directs Its Activities *At* the U.S." *Id.* (emphasis added).

- X then argued that "ECF Expressly *Aimed* Its Conduct *at* The U.S." 1-ECFSER-161 (emphasis added).

- And it argued that ECF's actions had "foreseeable *effects*" in the forum. 1-ECFSER-163.

In the district court, X also framed its jurisdictional arguments using cases that rely on and embrace *Calder*'s effects test. *See* 1-ECFSER-160 (citing, *e.g.*, *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) and *Schwarzenegger*, 374 F.3d at 805). X's cry of error at the district court's application of *Calder*'s effects test therefore rings particularly hollow.

### 3. X's New Argument Fails on the Merits.

Even if this Court were to consider X's new appellate argument, it lacks merit. X mischaracterizes *Morrill*—a case that found *no* jurisdiction—to propose a new theory of minimum contacts that would unconstitutionally extend personal jurisdiction to anyone physically located abroad who so much as communicates with an individual in the United States. This is improper for the following reasons:

**First**, X asserts for the first time that "this case involves the situation where 'a defendant engages in tortious activity toward a plaintiff *in the state* where that plaintiff resides.'" AOB-44 (emphasis added; quoting *Morrill*, 873 F.3d at 1148). But X did not allege that ECF

34

was physically present in the U.S. when facilitating such access, and ECF's evidence confirms that it has no U.S. presence at all, rendering *Morrill*'s hypothetical of "throw[ing] a rock through a window" both inapt and irrelevant. *See Morrill*, 873 at 1148. X employs a colorful but insignificant description that ECF "reached into" the U.S. to provide CCDH access to Brandwatch's UK platform. *See* AOB-44; 1-ER-105. But that only underscores ECF's lack of physical presence in the U.S.; it would not reach "into" the U.S. if it were already there. Thus, try as X might, it cannot make out an argument that fits with the evidence or *Morrill*'s committing-torts-while-physically-present-in-the-forum theory of jurisdiction.

Moreover, as detailed above, the unrebutted and uncontested evidence submitted by ECF showed that ECF facilitated CCDH's access to Brandwatch UK via a CCDH <u>UK</u> employee residing in the United Kingdom. 1-ECFSER-196, 235; 1-ER-86–90. Thus, in facilitating CCDH's access to Brandwatch UK, ECF did not target—and certainly did not commit a tort while physically present in—the United States.

**Second**, X contorts *Morrill* to suggest that the physically-present-torts theory may be stretched to encompass even *foreign* actions that are directed at the U.S. This misstates the law. Even the cases on which X relies are to the contrary, as this Court clarified in *Freestream* the confusion that X labors under here. The rule that the commission of in-state intentional torts will support jurisdiction is only applicable

35

where the defendant is "physically present in the forum state," *Freestream*, 905 F.3d at 606 (citing Judge Beverly Reid O'Connell and Judge Karen L. Stevenson, Federal Civil Procedure Before Trial ¶ 3:161–162 (Rutter Group Nat. Ed. 2017)), and that "[w]hen a non-resident has voluntarily entered a state and invoked the protections of [its] laws" jurisdiction exists for "tortious acts committed while there," *id.* (quoting *Elkhart Eng'g Corp. v. Dornier Werke*, 343 F.2d 861, 868 (5th Cir. 1965)). But X does not allege that anyone at ECF traveled to the U.S. in connection with these claims.

Moreover, in *Freestream*, this Court reaffirmed the application of *Calder* to reach "a defendant who never physically entered the forum state" but targets the forum state. *Freestream*, 905 F.3d at 604 (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)). *Freestream* presented an example of "deliberate action within the forum state" that fell outside *Calder* because the defendant, Schmidt—a Washington resident—flew to the forum state (Nevada) where he made the alleged tortious, defamatory statements at an industry convention there. 905 F.3d. at 601–02. "In other words, Schmidt thew *Morrill*'s hypothetical rock." *See id.* at 607. But where the defendant is physically located outside the forum, *Calder*'s effects test governs, as X embraced in its district court briefing. 1-ECFSER-160–63.

Therefore, X's assertion that it makes no difference whether ECF facilitated CCDH's login "by email, by letter, or by hand-delivery"—

because, it says, all of X's causes of actions arise from that act, AOB-46—is wrong and misstates the physically-present-torts theory from *Morrill*. Of course, ECF's location and how it allegedly undertook the actions of which X complains *do* matter under the Supreme Court's and this Court's precedents, and X cites no case that supports that a non-physically present, internationally-based defendant, can be haled into a U.S. court for allegedly facilitating another party's access to a *UK* company's software platform. None of X's cases come close.

At the hearing on ECF's motion, the district court asked X whether there was a case supporting its position, and X identified *Alejandro Fernandez Tinto Pesquera, S.L. v. Fernandez Perez*, No. 20-cv-2128-LHK, 2021 WL 254193 (N.D. Cal. Jan. 26, 2021), which the district court rightly concluded was inapposite. There, the foreign individual expressly aimed his conduct at the forum by sending a cease and desist letter into the forum and making a report to the Ohio Division of Liquor control. *See* 1-ER-18 (discussing *id.*). The district court correctly distinguished *Fernandez Perez* because ECF's alleged action "is not nearly as substantial a connection with this forum as sending a cease and desist letter to interfere with the plaintiff's contract and affirmatively contacting the Ohio Division of Liquor Control." 1-ER-19.[9]

_____

[9] X's citation to *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir. 1989) also does not help its attempt to expand *Morrill*, as it also embraced *Calder*'s effects test that X now eschews. Moreover, the acts targeting the forum were the completed tort itself—not an attenuated link in the causal chain—because the defendant made

While X's new argument fails legally, it fails factually too. X relies on the failed theory that ECF's sharing of login information with CCDH in the U.S. (which the evidence contradicts) was the tortious act in and of itself. But, as discussed already, the mere sharing of login information, without more, is an inchoate act that does nothing to injure X. More must happen—here, multiple intervening events in the causal chain, including CCDH's access to Brandwatch UK's platform, the publication of CCDH's allegedly injurious reporting, and advertisers' decisions not to advertise on Twitter. X appears to concede this when it vacillates from arguing (with emphasis) that the sharing of login credentials "*is the very tortious act giving rise to X's claims,*" AOB-49, to asserting that it is actually CCDH's conduct in accessing "X's data stored on Brandwatch servers" that "*is the conduct that gives rise to [X's] claims*[,]" and that "X's claims all center on *CCDH's unlawful access itself.*" AOB-51. X's contradictory arguments again show that its theory of its case remains hopelessly muddled, but at the very least, its admissions underscore that the mere sharing of login information alone is insufficient to establish jurisdiction under *Morrill* or any other theory.[10]

---

defamatory statements to individuals at the University of Arizona regarding plaintiff's employment there and "knew the injury and harm stemming from his communications would occur in Arizona, where [plaintiff] planned to live and work." *Id.* at 1259.

[10] X's unpublished cases do not help either. In *DEX Sys., Inc. v. Deutsche Post AG*, 727 F. App'x 276, 278 (9th Cir. 2018), jurisdiction existed because the copyright-infringing use occurred on DEX's servers in California, and those specific servers were implicated because of a

## C. Exercising Jurisdiction Over ECF Would Be Unreasonable.

Jurisdiction is only permissible where doing so would be "reasonable" and "not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801–02 (citation omitted). The Court considers the following factors to assess reasonableness:

> (1) [T]he extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 984 (9th Cir. 2021) (citation omitted).

As the district court correctly reasoned, most—though it should have concluded all—of these factors weigh against exercising jurisdiction over ECF, so the district court correctly concluded that asserting personal jurisdiction over ECF would be unreasonable. 1-ER-26–31.

---

specific agreement of the parties to use those California-based (instead of Europe-based) servers. And in *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. SACV111062JVSANX, 2014 WL 12700983, at *6 (C.D. Cal. Apr. 10, 2014), the defendant "engaged in significant conduct in the forum state" including "highly collaborative" activity with the plaintiff. X has no case that permits jurisdiction on such thin allegations as here.

**First**, ECF's only connection to this matter was facilitating access to a UK-based platform via a UK resident and employee of CCDH UK. ECF did not, and has never, purposefully interjected itself into the United States. Even if ECF contacted someone in the United States, as X's disproven allegations speculate, such contact would be "very limited," which weighs heavily against exercising personal jurisdiction. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993). On such allegations, ECF could not "reasonably anticipate being haled into court []here." *World-Wide Volkswagen*, 444 U.S. at 297 (citation omitted); *see also Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) ("The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise.").

**Second**, ECF faces a unique burden by being forced to litigate this matter in California, a state that has no connection to this case other than coincidentally being the (former) location of X's headquarters.[11] As this Court recognizes, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight" in determining reasonableness of exercising jurisdiction. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987). ECF is

---

[11] Kate Conger & Ryan Mac, *X to Close Flagship San Francisco Offices*, N.Y. Times (Aug. 5, 2024), at https://www.nytimes.com/2024/08/05/technology/x-twitter-san-francisco-office.html.

incorporated in the Netherlands and all of its operations are in Europe. 1-ER-5, 1-ECFSER-194. And X's claims purportedly derive from interference with a foreign contract between Brandwatch UK and X's Irish affiliate. 1-ER-103. This factor favors ECF.

**Third/Fourth**, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993) (quoting *Asahi*, 480 U.S. at 115)). For X's claims against ECF, the relevant contractual relationships are all between foreign parties. X asserts that ECF's acts interfered with X's Irish subsidiary's agreement with Brandwatch UK. 1-ER-103. ECF acted under its agreements with Brandwatch UK, and such agreements chose English law and English courts as the venue for any disputes. 1-ECFSER-194, 197–226. X has not alleged any facts—nor has it presented any evidence—to show that the U.S. has more of an interest than the Netherlands or United Kingdom in hearing this dispute. *See Doe v. Geller*, 533 F. Supp. 2d 996, 1008 (N.D. Cal. 2008) ("The court may presume that England has a sovereign interest in adjudicating a claim against a British corporation and a British resident."). The interest of the United States is slight in comparison. Thus, the third and fourth factors also favor ECF.

**Fifth/Sixth/Seventh**, Dutch or English courts would be more efficient venues to resolve X's claims. X alleges unauthorized access of data provided under a contract between foreign parties, Brandwatch UK

41

and X's Irish subsidiary, facilitated by a Dutch entity (ECF) to a UK resident (Callum Hood) regarding ECF's subscription with Brandwatch UK, all to assist CCDH's global reporting about a global company. 1-ECFSER-195–96, 235; 1-ER-86–90, 103. X's conclusory assertion that ECF's conduct occurred "in" the United States is not supported by evidence or allegation. Ultimately, X cannot establish there is no alternative forum because it could bring its dispute in a forum that has jurisdiction over ECF. Therefore, these factors all favor dismissal.

Accordingly, the district court correctly determined that exercising personal jurisdiction over ECF would be unreasonable.

## II. The District Court Correctly Dismissed X's Claims Against ECF for Failure to State a Claim.

Not only did the district court correctly grant ECF's motion to dismiss for lack of personal jurisdiction, it also correctly granted the motion for X's failure to state a claim. The district court based its dismissal order on the arguments in CCDH's motion to dismiss, which ECF joined and augmented with arguments of its own. 1-ER-9. ECF again joins in those arguments in CCDH's Answering Brief. Therefore, if necessary, this Court should alternatively affirm the district court's dismissal of X's claims against ECF under Rule 12(b)(6).

In addition to the arguments in CCDH's Answering Brief, X's state law tort claims against ECF fail because its highly attenuated causal chain cannot support causation or damages. Taking X's position at face

value, there is no logical, plausible, or foreseeable connection between ECF facilitating CCDH's access to Brandwatch UK and X's downstream loss of advertising revenue. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (holding that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged"). There are multiple, independent intervening and superseding acts in the causal chain, including (1) CCDH's access to Brandwatch UK, (2) its use of the Brandwatch UK platform to engage in newsgathering regarding hate speech on the X platform, (3) CCDH's preparation and publication of its resulting reporting, and (4) advertisers' independent spending decisions.

X admitted in the district court that it was the publication of CCDH's reports and its "call[] for companies to stop advertising on X," that are the supposed proximate causes of its damages, asserting that "[a]s a direct and proximate result" of CCDH's publication (*not* of the alleged scraping or data access), "at least eight organizations, including large, multinational corporations that have historically run paid advertising on X, immediately paused advertising spend." 1-ECFSER-121; *see also* 1-ER-95, 102. This cannot suffice for causation and recoverable damages against ECF, so X's tort claims fail as a result. *Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001) ("It is black-letter law that damages which are speculative, remote, imaginary, contingent or merely possible cannot serve as a legal basis for recovery." (citation omitted)).

43

Accordingly, if necessary, this Court should affirm the district court's alternative basis for dismissing ECF under Rule 12(b)(6).

### III. The District Court Did Not Abuse Its Discretion by Denying X Leave to Amend Against ECF, and X Has Waived Any Such Argument by Not Raising It in Its Opening Brief.

X does not propose any amendment of its claims against ECF that could cure its jurisdictional deficiencies, so it waived the issue. *See* AOB-56–58; *Smith*, 194 F.3d at 1052 ("arguments not raised by a party in its opening brief are deemed waived"). It also does not renew its request for jurisdictional discovery on appeal, so that too is waived. *See* AOB-56–58; *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1276, n.3 (9th Cir. 2024) ("Because [appellant] failed to 'specifically and distinctly argue[ ]' this point in its opening brief, it is waived." (citation omitted)).

Out of an abundance of caution, ECF notes that even if X belatedly seeks leave to amend as to ECF in its reply brief, it fails to provide any basis upon which amendment could cure the jurisdictional or pleading defects as to ECF. *See* AOB-57–58. Thus, the district court did not abuse its discretion by denying leave to amend because it reasonably determined that amendment would be futile. *See Leadsinger*, 512 F.3d at 532; *Data Disc,* 557 F.2d at 1285, n.1 (in assessing personal jurisdiction, "the trial court is vested with broad discretion and will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant").

The unrebutted evidence submitted by ECF established that it provided access to its Brandwatch UK account to an individual located in the United Kingdom, and did so with Brandwatch UK's knowledge and approval. 1-ECFSER-196, 235; 1-ER-86–90. Nothing that X could find in jurisdictional discovery or plead through amendment could alter those facts or the district court's conclusions. And in the face of such evidence, X could not plead (or replead) contrary facts consistent with Rule 11.

X's speculation in the district court that evidence could exist where ECF also provided separate access to a CCDH recipient in the United States was "little more than a hunch" that did not warrant jurisdictional discovery nor amendment. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). And it would be insufficient to confer jurisdiction in any event because such an act would be too insubstantial and attenuated. It bears noting that in the district court proceedings, X claimed to have information regarding a "rogue" agent at ECF who knowingly violated Brandwatch UK's subscription terms. 1-ECFSER-167. However, X provided no evidence to support such a fantasy and abandons it on appeal, too. Amendment is therefore both waived as to ECF and futile.

## CONCLUSION

ECF respectfully requests that this Court affirm the judgment of the district court.

September 20, 2024          Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: *s/Nathaniel L. Bach*

*Attorneys for Defendant-Appellee*
Stichting European Climate
Foundation

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-2643

I am the attorney or self-represented party.

**This brief contains** 8,656 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Nathaniel L. Bach **Date** September 20, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*